1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   VINCENT CONCEPCION,              )  No. CV 04-7173-PJW
                                      )
11              Plaintiff,            )
                                      )
                                      )  MEMORANDUM OPINION AND ORDER
12              v.                    )
                                      )
13   JO ANNE B. BARNHART,             )
     Commissioner of the             )
14   Social Security Administration, )
                                      )
15              Defendant.            )
     _____)

16

17                              I.

18                          INTRODUCTION

19       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) and

20   1383(c)(3), seeking reversal and remand of the decision by Defendant

21   Social Security Administration ("the Agency") denying benefits.

22   After reviewing the record and for the reasons discussed below, the

23   decision of the Agency is AFFIRMED, and this action is dismissed with

24   prejudice.

25

26

27

28

1

2

II.

SUMMARY OF FACTS AND PROCEEDINGS

3      Plaintiff was, at the time of the administrative hearing, a 48

4  year old former painter with a tenth grade education.[1]  (AR 51, 66.)

5  He protectively filed an application for Supplemental Security Income

6  benefits on June 4, 2002, alleging inability to work since September

7  9, 2001, due to diabetes, elevated cholesterol, cirrhosis, an ulcer,

8  and arthritis.  (AR 40-43, 60.)  He claimed that he could not stand or

9  sit for extended periods of time and that he had severe pain in his

10 legs, arms, and feet.  (AR 60.)  He also complained of severe

11 headaches, severe nervousness, chronic shaking, impaired hearing, and

12 impaired vision.  (AR 60.)  Following the denial of his claim,

13 Plaintiff requested a hearing before an Administrative Law Judge

14 ("ALJ").[2]  (AR 33-38.)

15      On June 26, 2003, the ALJ held a hearing.  (AR 218-57.)  By

16 decision dated September 25, 2003, he denied Plaintiff's claims.  (AR

17 15-21.)  Following the five-step sequential evaluation procedure

18 outlined in 20 C.F.R. § 416.920(a)(4), the ALJ found, at step one,

19 that Plaintiff had not engaged in substantial gainful activity since

20 June 4, 2002.  (AR 16.)  At step two, he found that Plaintiff had the

21 severe impairments of pancreatitis, insulin dependent diabetes,

22 alcoholic liver disease, peptic ulcer disease, gastroesophageal reflux

23 disease, right knee lateral meniscus tear and chondromalacia, and

24

---

25      [1]  Although Plaintiff's brother indicated that Plaintiff "does
not read" and that he is developmentally delayed, Plaintiff testified
26 that he is able to read and write.  (AR 76, 220.)  There is nothing in
the record to suggest that Plaintiff is illiterate.

27
     [2]  The reconsideration level has been eliminated in certain
28 randomly selected cases.  20 C.F.R. § 416.1406.

1  bilateral trigger thumb.[3]  (AR 16-17.)  The ALJ concluded, however,

2  that these impairments did not meet or medically equal any impairment

3  listed in Appendix 1, Subpart P, Regulations No. 4.  (AR 17.)

4      At step three, the ALJ found that Plaintiff's allegations of

5  symptoms, limitations, and disabling pain were not credible.  (AR 21.)

6  He determined that Plaintiff retained the residual functional capacity

7  to lift/carry 50 pounds occasionally and 25 pounds frequently and

8  stand/walk two hours out of eight in 30 minute increments.  (AR 21.)

9  The ALJ concluded that Plaintiff's sitting ability was unrestricted,

10  but that he was limited to no more than occasional bending.  (AR 21.)

11  The ALJ found that Plaintiff needed access to a restroom once per hour

12  for approximately five minutes.[4]  (AR 21.)

13      With these restrictions, the ALJ found at step four that

14  Plaintiff was unable to perform his past relevant work as a painter.

15

16

17

18
    _____

19      [3]  "Trigger finger (or thumb)" is a condition in which the finger
    locks and then suddenly extends with a snap.  It commonly occurs in
    patients with rheumatoid arthritis and diabetes mellitus.  The Merck
20  Manual, 17th ed., p. 496.

21
        [4]  Although in his findings, the ALJ did not characterize
22  Plaintiff's residual functional capacity as one for medium work (AR
    21), in his credibility findings, the ALJ repeatedly refers to
23  Plaintiff's ability to perform "medium level activities" (AR 19).
    Although Plaintiff is able to lift 50 pounds occasionally and 25
24  pounds frequently, his residual functional capacity is not one for
    "medium level activities" because of the standing and walking (and
25  bending) limitations.  20 C.F.R. § 416.967(b) and (c); SSR 85-15.  In
    fact, the vocational expert testified that the only jobs Plaintiff
26  could perform within his restrictions were sedentary work.  (AR 252.)
    The State agency physician similarly indicated that Dr. Emont's
27  medical source statement was for a sedentary residual functional
    capacity.  (AR 181.)
28

3

1   (AR 21.)  At step five, however, he concluded that Plaintiff was

2   capable of performing other jobs in the economy, including order

3   clerk, and, thus, was not disabled.  (AR 21.)  Dissatisfied with the

4   decision, Plaintiff requested review by the Appeals Council, which was

5   denied.  (AR 4-7.)  Plaintiff then filed suit in this Court.

6                                   III.

7                                 ANALYSIS

8        Plaintiff contends that the ALJ erred when he failed to 1)

9   accurately summarize material medical evidence and testimony; 2)

10  provide an explanation for why Plaintiff's impairment did not

11  medically equal a Listing; 3) properly weigh the medical evidence; and

12  4) provide clear and convincing reasons for rejecting Plaintiff's

13  testimony.  (Joint Stipulation ("JS") at 3.)  For the following

14  reasons, the Court disagrees with Plaintiff and concludes the ALJ did

15  not err.

16  A.   Standard of Review

17       "Disability" is defined as the inability to perform any

18  substantial gainful activity because of "any medically determinable

19  physical or mental impairment which can be expected to result in death

20  or which has lasted or can be expected to last for a continuous period

21  of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The

22  Court may overturn the ALJ's decision that a claimant is not disabled

23  only if the decision is not supported by substantial evidence or is

24  based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

25  Cir. 1989).

26       Substantial evidence "'means such relevant evidence as a

27  reasonable mind might accept as adequate to support a conclusion.'"

28  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*

                                    4

*Co. V. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere
scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d
599, 601 (9th Cir. 1998), and "does not mean a large or considerable
amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence
in the record is susceptible to more than one rational
interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably
support either affirming or reversing the Agency's decision, this
Court must not substitute its judgment for that of the ALJ.  *See
Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ
committed error but the error was harmless, reversal is not required.
*See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th
Cir. 2004)(applying the harmless error standard to social security
cases).

B.  <u>The ALJ's Failure to Summarize all of the Evidence does not
Require Remand</u>

1.  <u>The Medical Evidence</u>

Plaintiff contends that the ALJ failed to discuss his
hospitalization in July 2002 for pancreatitis and his orthopedic
treatment that same month.  He seeks remand to allow the ALJ to
address these medical records.  Though the ALJ did not discuss these
records, the Court concludes that remand is not required because they
were not relevant to the analysis of Plaintiff's disability claim.

An ALJ is not required to analyze and discuss every item of
evidence in the record.  "Rather, [he] must explain why 'significant
probative evidence has been rejected.'"  *Vincent v. Heckler*, 739 F.2d

1393, 1395 (9th Cir. 1984)(quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

The ALJ failed to summarize the record of Plaintiff's hospitalization in July 2002 for complaints of abdominal pain attributed to chronic pancreatitis and right knee pain. (AR 90-96.) In addition to the pancreatitis, it was noted at the time of Plaintiff's admission that his blood pressure was elevated. (AR 96; JS at 3.) Though the ALJ should have mentioned these records in his decision when he summarized the medical evidence, his failure to do so amounts to harmless error because these records had no impact on the disability determination. *See Batson*, 359 F.3d at 1197 (applying harmless error standard to social security rulings); *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same). There is no indication that Plaintiff had any limitations due to his hypertension or pancreatitis. In fact, his attending physician indicated in a discharge note that no disability was anticipated. (AR 92.) Further, the doctor did not limit Plaintiff's activities or, more importantly, his ability to work. (AR 92.) Thus, the ALJ's failure to discuss these records--and, presumably, to consider them in his disability evaluation--was harmless error and does not require remand.

Similarly, the ALJ's failure to specifically note the orthopedic treatment entry of July 29, 2002, does not warrant remand, either. (AR 91.) The ALJ noted Plaintiff's knee complaints and asserted limitations as well as the medical findings and diagnoses. (AR 17, 18.) Nothing in the orthopedic records from July 2002 indicates that Plaintiff suffered more restrictions than the ALJ found. Although this entry, like others, noted that Plaintiff used a cane, nowhere is

1  there any indication that it was prescribed or required.  (AR 91.)

2  Certainly, it would have been better for the ALJ to discuss these

3  records, but his failure to do so does not require remand because

4  consideration of the records would not have affected the outcome of

5  the disability determination.

6      2.  <u>The ALJ's Summary of Plaintiff's Testimony</u>

7      Plaintiff contends that the ALJ failed to properly summarize his

8  testimony and that this error resulted in the ALJ wrongly concluding

9  that Plaintiff could work when, in fact, he could not work.  He seeks

10  remand on this issue to allow the ALJ to reconsider his testimony.

11  Because the record does not support Plaintiff's claims here, they are

12  rejected.

13      The ALJ found that Plaintiff could lift 50 to 60 pounds and sit

14  for 40 minutes.  (AR 17.)  Plaintiff contends that he testified that

15  he did not know how much he could lift and that he could only sit for

16  30 minutes.  He argues that the ALJ's findings to the contrary are

17  wrong.  The record does not support Plaintiff's claim.  Plaintiff

18  testified as follows:

19      Q.   [by the ALJ] How much weight can you lift now?

20      A.   [Plaintiff] Probably about, probably about 50 or 60

21           pound [sic], maybe.  I don't know.

22      Q.   How about in a – how long can you sit for?

23      A.   I can sit up straight for about, about 40 minutes.

24  (AR 224.)

25      Plaintiff contends that the ALJ erred in concluding that he could

26  lift 50 to 60 pounds based on his testimony because Plaintiff

27  testified he was not sure.  Plaintiff also complains that the ALJ's

28  reliance on his testimony that he could sit for 40 minutes was

7

1  misplaced in that he had testified immediately before that that he
2  could only sit for 30 minutes.

3      Though Plaintiff's testimony that he could lift 50 or 60 pounds
4  was equivocal, it was for the ALJ to decide what Plaintiff meant.
5  *Magallanes*, 881 F.2d at 750 (pointing out that ALJ is charged with
6  resolving ambiguities in the testimony).  The same holds true for
7  Plaintiff's claim that he could sit for 30 minutes (AR 223), and his
8  testimony seconds later that he could sit for 40 minutes (AR 224).
9  The ALJ's ultimate conclusion that he could sit for 40 minutes is
10 supported by this record and will not be disturbed.  *Sample v.*
11 *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)(holding that, where ALJ's
12 interpretation of the evidence is reasonable, it must be upheld).

13 C.   Listing Equivalence

14     Plaintiff contends that the ALJ erred in failing to provide any
15 rationale for his conclusion that the combined effects of Plaintiff's
16 impairments did not medically equal the criteria of an unspecified
17 Listed impairment, citing *Marcia v. Sullivan*, 900 F.2d 172, 175-76
18 (9th Cir. 1990).  (JS at 5.)  He argues that the ALJ was required to
19 obtain testimony from a doctor regarding whether his conditions
20 equaled a Listing.  Plaintiff asserts that, because the medical expert
21 was never asked about medical equivalence, the ALJ must have made this
22 determination on his own and, therefore, the matter requires remand.
23 He also notes that additional evidence was submitted after the medical
24 expert testified and argues that, had the medical advisor considered
25 this evidence, he might have concluded that Plaintiff's impairments
26 equaled a Listed impairment.  (JS at 5-6, 8.)  For the following
27 reasons, the Court disagrees.
28

8

1    To begin with, the Court notes that Plaintiff has failed to even

2    identify the Listing which he believes his condition is equal to.

3    This speaks volumes about this claim.  At the very least, if Plaintiff

4    wants to persuasively argue to this Court (or the ALJ) that he equals

5    a Listing, he should identify the Listing that he believes he equals

6    and explain how he equals it.  The shotgun approach championed by

7    Plaintiff in this case--i.e., "I fit one of the Listings in Sections

8    1.00 through 14.00, you figure it out"--is not acceptable.  Further,

9    it suggests to the Court that Plaintiff does not really believe that

10   his condition is equal to any of the Listings and merely hopes that

11   the Court will remand the case for further proceedings due to any

12   uncertainty Plaintiff has tried to create on appeal.

13        As to the substance of Plaintiff's claim, the record does not

14   support Plaintiff's assertion that the ALJ erred in determining that

15   he did not meet or equal a Listing.  The medical expert testified that

16   Plaintiff's impairment did not meet the criteria of multiple Listings

17   considered.  (AR 242.)  Though he did not address equivalency

18   directly, clearly, there is nothing in this record to suggest

19   equivalency, nor did Plaintiff raise equivalency at the hearing.

20   Plaintiff bore the burden of proof at the hearing.  *Burch v. Barnhart*,

21   400 F.3d 676, 679 (9th Cir. 2005).  If he was seeking to obtain a

22   finding of disability based on equivalency, he should have said so.

23   His failure to do so is fatal to his claim where, as here, there is no

24   evidence that he equals a Listing.

25        Plaintiff notes that the medical expert had not reviewed all of

26   the records when he testified, as some were submitted after the

27   hearing.  He notes in particular a May 2003 hospitalization for

28   pancreatitis.  (AR 199-202.)  Plaintiff also points out that a 2002 CT

9

scan--which Plaintiff contends documents that he might have colon cancer--contradicted the medical expert's testimony that there was no objective basis for Plaintiff's abdominal pain. (JS at 6.)  He also disputes the medical expert's testimony that, aside from one episode of diabetic ketoacidosis in May 2002, Plaintiff's blood sugars have been reasonably good, and he cites various instances of abnormal blood sugars. (JS at 6.)

Plaintiff's arguments are not persuasive.  Although the medical expert had not reviewed the May 2003 hospitalization records when he testified, these records are not materially different from the records the medical expert did review.  Further, the ALJ did review them before rendering his decision and discussed them in detail, noting Plaintiff's complaints at the hospital, the diagnoses, and treatment, as well as the fact that this hospitalization was due to Plaintiff's failure to take his medication combined with his consumption of alcohol. (AR 199-200.)  Plaintiff fails to state how this hospitalization record establishes Listing equivalency.  This was his burden.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)(explaining that in order to establish disability based on equivalency, a claimant must present medical findings equal in severity to a Listed impairment).  Nor does he explain how these records suggest that his limitations are greater than the ALJ found.  Absent evidence of this, his claim fails.

Plaintiff similarly fails to establish the significance of the 2002 CT scan.  Although the medical advisor did not discuss this scan, he discussed a May 2002 scan, which was "essentially negative."  (AR 246.)  A follow up colonoscopy in May 2002, revealed only small hemorrhoids and no thickening of the mucosa (AR 103), and there was no

evidence of cancer (AR 116).  The colonoscopy report also indicated that, by then, the abdominal pain had resolved.  (AR 103.)

As to Plaintiff's elevated blood sugar readings, Plaintiff's testimony concerning whether these readings are still elevated despite recently-prescribed insulin is ambiguous at best (AR 236), and, again, Plaintiff provides no support for his argument that these intermittent readings combine to equal any Listing or that they suggest any greater level of disability than found by the ALJ.

Plaintiff also seems to argue that the ALJ erred when he stated that the medical expert testified that Plaintiff needed to use the bathroom frequently, when, in fact, it was Plaintiff who testified to this.  (JS at 6-7.)  Any error in attribution is clearly irrelevant. Plaintiff testified that he needed to use the bathroom every hour (AR 238), and the ALJ included this restriction in his residual functional capacity assessment (AR 21).  The ALJ's failure to attribute this limitation to Plaintiff had no impact on the decision.

For these reasons, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairment did not medically equal any Listed impairment.  Further, Plaintiff has offered no theory, plausible or otherwise, as to how his impairments combined to equal a Listed impairment.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *see also Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). Here, Plaintiff fails even to state what Listing he believes he equals, much less how his condition equaled it.  His claims of error, therefore, are overruled.

D.    <u>The ALJ's Assessment of the Medical Evidence</u>

      Plaintiff contends that the ALJ's conclusion that Plaintiff was
not disabled is not based on substantial evidence.  He argues that
reliance on the opinion of consultative examiner was unwarranted
because her conclusions were contradictory.  He questions how this
doctor could find that he was be able to climb, stoop, kneel, and
crouch frequently when she also found that he could only stand for two
hours a day.  (JS at 9, AR 162.)  Though there are internal
inconsistencies in the consultative examiner's report as well as
inconsistencies between that report and other doctors' findings, the
ALJ did not err in relying on parts of the report.  As such,
Plaintiff's claims of error here fail.

      The consultative examiner concluded in her report that Plaintiff
was capable of climbing, stooping, kneeling, and crouching two-thirds
of the day.  (AR 162.)  In the same report, she opined that he was
able to stand and walk for only two hours in a day.  (AR 162.)
Plaintiff contends that these two findings are incompatible.  He also
points out that the consultative examiner's opinion that Plaintiff
could climb and kneel is contradicted by the medical expert's opinion
that he could not do these things.  (AR 246.)

      Though it is clear that the consultative examiner's findings as
to climbing, stooping, kneeling, and crouching are inconsistent with
her finding that Plaintiff can only stand for two hours, that does not
mean that the ALJ was precluded from using portions of her opinion in
his analysis.  It is not necessary for the ALJ to agree with
everything an expert says to rely on the expert's opinion regarding
issues that the ALJ finds persuasive.  *Russell v. Bowen*, 856 F.2d 81,
83 (9th Cir. 1988).  Thus, the ALJ did not err in relying on the

12

consultative examiner's opinion in reaching his conclusion that
Plaintiff was not disabled, despite the fact that the report had some
inconsistencies and that the opinion differed in part from the medical
expert's opinion.   Ultimately, the ALJ resolved the conflict in the
medical testimony and determined that Plaintiff could stand for only
two hours and could only occasionally stoop or squat.  (AR 252.)
Substantial evidence supports this determination and it will not be
overturned.

      Plaintiff further argues that, despite the fact that a large
volume of evidence was added to the record after Plaintiff's
disability claim was initially denied, based, in part, on the
consultative examiner's opinion, the medical doctor who reviewed the
file simply rubber-stamped the consultative examiner's opinion of non-
disability and denied the claim.  (JS at 10.)   The evidence Plaintiff
speaks of includes records from a May 2003 hospitalization,
Plaintiff's treatment for his trigger thumbs, and treatment for his
knees.   Plaintiff contends that, had the ALJ properly considered the
results of an October 2002 MRI of the right knee and the impact of
Plaintiff's bilateral trigger thumbs, which had to be injected for
pain (AR 197), it is very likely that he would have given less weight
to the consulting doctor.  (JS at 10.)   The record does not support
this argument.

      The ALJ considered the 2003 records as well as the records
relating to Plaintiff's treatment for bilateral trigger thumb and
determined that Plaintiff could still work.  (AR 18.)   Plaintiff does
not refer to anything in the record which would indicate that the
ALJ's assessment of Plaintiff's limitations was wrong.   Moreover,
although the state agency relied heavily on the consulting examiner's

1  opinion (AR 169, 181), it also considered the treating source records

2  (AR 33).  Finally, Plaintiff points to nothing in the medical record

3  which suggests greater disability than that found by the ALJ.  The few

4  treating opinions there are in the record do not support Plaintiff's

5  claims of total disability.  To the contrary, they do not even suggest

6  the level of disability found by the ALJ.  (AR 92, 116.)  There was,

7  therefore, no error in the ALJ's evaluation of the medical evidence

8  and for that reason it will be affirmed.

9  E.    The ALJ's Assessment of Plaintiff's Credibility

10      Plaintiff maintains that the ALJ erred when he found that

11 Plaintiff was not a credible witness.  He seeks remand for further

12 evaluation of his testimony.  This argument is also rejected.  The ALJ

13 was tasked with evaluating Plaintiff's credibility and he concluded

14 that Plaintiff was not credible.  This finding is supported by

15 substantial evidence in the record and will not be overturned.

16      Where Plaintiff has established the existence of a medically

17 determinable impairment which may reasonably account for the symptoms

18 alleged, although not necessarily the degree of symptoms alleged, in

19 the absence of proof of malingering, the ALJ may not reject subjective

20 complaints without citing clear and convincing reasons for doing so.

21 *Batson*, 359 F.3d at 1196.  Here, there was no indication of

22 malingering.  Thus, the ALJ was required to cite clear and convincing

23 reasons for finding Plaintiff not entirely credible.  As explained

24 below, he did.

25      In questioning Plaintiff's credibility, the ALJ cited

26 inconsistencies in Plaintiff's statements concerning his use of drugs

27 and alcohol.  This is an appropriate basis for rejecting a claimant's

28 credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

14

1  2002)(upholding ALJ's finding that claimant was not credible based, in
2  part, on conflicting information about drug and alcohol use).  The ALJ
3  noted that, although Plaintiff testified at the June 2003 hearing that
4  he had stopped drinking alcohol and using cocaine approximately five
5  months before the hearing, the May 2003 hospital records indicated
6  that he had drank the day before his admission.  (AR 19, 200, 229.)

7       The ALJ also noted that Plaintiff's inconsistent treatment for
8  his claimed physical problems suggested that Plaintiff's allegations
9  of pain and suffering were exaggerated.  (AR 19.)  This is a valid
10 reason for questioning credibility.  *See* SSR 96-7p (The nature and
11 extent of treatment is a factor to be considered in assessing
12 credibility.).  Though Plaintiff disputes that his treatment was
13 irregular, the record supports the ALJ's finding that it was.

14      The ALJ noted that Plaintiff was not prescribed narcotic pain
15 medications to treat his pain by any of his doctors.  This is another
16 factor the ALJ may consider determining whether Plaintiff's claims of
17 pain were exaggerated.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th
18 Cir. 2001).  Plaintiff contends that he was not prescribed narcotics
19 because he was a drug addict.  Nothing in the medical record supports
20 this claim and the ALJ's finding to the contrary is not unreasonable.

21      Plaintiff further argues that the ALJ did not explain why he
22 rejected Plaintiff's testimony that Plaintiff had to use the bathroom
23 every 45-60 minutes for 5-10 minutes, "and he failed to acknowledge
24 that urinary frequency had any impact on employability despite the
25 [medical expert's] testimony."  (JS at 15.)  The ALJ did not fail to
26 acknowledge the impact of this limitation in assessing employability.
27 To the contrary, he found that Plaintiff needed to use the bathroom
28 once per hour for approximately five minutes.  (AR 21.)  Based upon

15

1  this restriction, along with the others imposed, the vocational expert

2  testified that Plaintiff could not perform the job of assembler or

3  general laborer, but he could perform the job of beverage order clerk

4  (AR 255), which was the only job the ALJ found Plaintiff could perform

5  (AR 20).

6      Last, Plaintiff contends that the ALJ erred in failing to

7  consider all of the relevant evidence in evaluating Plaintiff's

8  credibility, in particular, the written questionnaire submitted by his

9  brother, Victor Concepcion.  This claim is without merit.

10     Victor Concepcion submitted a form questionnaire in which he

11 wrote that Plaintiff spent a typical day walking in the park, watching

12 people play sports, and talking to people.  (AR 73.)  He also wrote

13 that Plaintiff was "not very mobile."  (AR 74.)  He noted that

14 Plaintiff did not cook or shop, but was able to go to fast food places

15 and to churches in the neighborhood for food.  (AR 74.)  According to

16 Victor, Plaintiff also did not do any household chores, and was

17 limited in his physical activities.  (AR 75.)  Additionally, Plaintiff

18 needed transportation and was unable to drive or walk long distances.

19 (AR 75.)  Plaintiff's brother also indicated that Plaintiff was unable

20 to get along with others, and suffered from low self-esteem and

21 depression.  (AR 20, 77.)

22     While it is true that the ALJ did not discuss this questionnaire,

23 the Court concludes that any error in failing to discuss it was

24 harmless because the Court "can confidently conclude that no

25 reasonable ALJ, when fully crediting the testimony, could have reached

26 a different disability determination." *Stout v. Commissioner, Social*

27 *Security Administration*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Though

28 Plaintiff's brother indicated that Plaintiff had physical limitations,

16

1  the ALJ included these same limitations in the decision.  Though

2  Plaintiff's brother indicated that Plaintiff did not cook, shop or

3  clean house, nothing in the questionnaire suggests that Plaintiff was

4  unable to perform household chores, only that he did not perform them.

5  (AR 171, 173.)  Plaintiff's failure to perform these chores was most

6  likely due to the fact that, according to Victor, Plaintiff was

7  homeless.  Thus, fully crediting Plaintiff's brother's observations,

8  it seems clear that any reasonable ALJ would have arrived at the

9  conclusion that Plaintiff was not disabled under the regulations.  As

10 a result, remand is not required to address the questionnaire.

11                                 IV.

12                             CONCLUSION

13      For the reasons set forth above, the Court finds that the

14 Agency's findings are supported by substantial evidence and are free

15 from material legal error.  The decision of the Agency is, therefore,

16 affirmed.  The Court hereby enters summary judgment in favor of the

17 Agency and against Plaintiff.

18      IT IS SO ORDERED.

19

20      Dated:    ____September 25, 2006____.

21

22                          ___/s/_____
                            PATRICK J. WALSH
23                          UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28 S:\PJW\Cases-Soc Sec\CONCEPCION\Memo Opinion_Ord.wpd

                                 17